| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401 | |
| ALPINE SITE SERVICES INC., a Colorado Corporation,<br>Plaintiff,<br><br>v.<br><br>JEFFERY T. O'LOUGHLIN, an individual,<br>Defendant. | |
| Attorneys for Plaintiff<br>Steven W. Watkins, #27532<br>Kelci L. Sundahl, #51397<br>BRADLEY DEVITT HAAS & WATKINS, P.C.<br>South Mesa Professional Building<br>2201 Ford Street<br>Golden, Colorado 80401<br>Telephone Number: (303) 384-9228<br>Facsimile Number: (303) 384-9231<br>e-mail: steve@goldenlawyers.com<br>e-mail: kelci@goldenlawyers.com | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Div.     Ctrm: |

## DISTRICT COURT CIVIL SUMMONS

## TO THE ABOVE NAMED DEFENDANT:  JEFFERY T. O'LOUGHLIN

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

EXHIBIT
2

Dated: March 29, 2021             BRADLEY DEVITT HAAS & WATKINS, P.C.
                                  Attorneys for Plaintiff

                                  By: /s/ Steven W. Watkins
                                  Steven W. Watkins, #27532

This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.

WARNING: A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401 | |
| ALPINE SITE SERVICES INC., a Colorado Corporation,<br>Plaintiff,<br><br>v.<br><br>JEFFERY T. O'LOUGHLIN, an individual,<br>Defendant. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff<br>Steven W. Watkins, #27532<br>Kelci L. Sundahl, #51397<br>BRADLEY DEVITT HAAS & WATKINS, P.C.<br>South Mesa Professional Building<br>2201 Ford Street<br>Golden, Colorado 80401<br>Telephone Number: (303) 384-9228<br>Facsimile Number: (303) 384-9231<br>e-mail: steve@goldenlawyers.com<br>e-mail: kelci@goldenlawyers.com | Case Number:<br><br>Div.    Ctrm: |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, or

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

Or

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

RESPECTFULLY submitted this 29th day of March, 2021.

**BRADLEY DEVITT HAAS & WATKINS, P.C.**
Attorneys for Plaintiffs

By: /s/ Steven W. Watkins
Steven W. Watkins, #27532

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401 | |
| ALPINE SITE SERVICES INC., a Colorado Corporation,<br>Plaintiff,<br><br>v.<br><br>JEFFERY T. O'LOUGHLIN, an individual,<br>Defendant. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiff<br>Steven W. Watkins, #27532<br>Kelci L. Sundahl, #51397<br>BRADLEY DEVITT HAAS & WATKINS, P.C.<br>South Mesa Professional Building<br>2201 Ford Street<br>Golden, Colorado 80401<br>Telephone Number: (303) 384-9228<br>Facsimile Number: (303) 384-9231<br>e-mail: steve@goldenlawyers.com<br>e-mail: kelci@goldenlawyers.com | Case Number:<br><br>Div.     Ctrm: |

## COMPLAINT

COMES NOW the Plaintiff, Alpine Site Services Inc., by and through its undersigned attorneys, Bradley Devitt Haas & Watkins, P.C., with its Complaint against the Defendant, and in support thereof states and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff, Alpine Site Services Inc. ("Plaintiff" or "Alpine") is a Colorado corporation with its principal offices located at 10875 Dover St., Unit 1100, Westminster, CO 80021.

2. Defendant, Jeffery T. O'Loughlin ("Defendant" or "O'Loughlin") is an individual whose last known address is 5454 Ward Way, Littleton, CO 80127.

3. Pursuant to Colorado Constitution, Article 6, Section 9(1), as a court of general jurisdiction, this Court has jurisdiction to consider this matter.

4. Pursuant to C.R.C.P. 98(c) and Paragraph 4.0 of the Parties' Compromise Settlement Agreement and Release, venue is proper in Jefferson County.

## GENERAL ALLEGATIONS

5. Defendant brought an action against the Plaintiff, captioned *Jeff T. O'Loughlin v. Alpine Site Services Inc., Case No. 4:18-CV-01346*, in the Southern District of Texas, Houston Division. Defendant was represented by Texas attorneys Melissa Moore and Curt Hesse of Moore & Associates.

6. On November 15, 2018, Plaintiff and Defendant entered into a Compromise Settlement Agreement and Release fully settling all claims brought in *Jeff T. O'Loughlin v. Alpine Site Services, Case No. 4:18-CV-01346* (the "Agreement").

7. Pursuant to the terms of the Agreement, Defendant agreed to maintain confidentiality and that a breach of confidentiality would be material.

8. Alpine was served with a new Complaint in a matter captioned, *Beau Kelley v. Alpine Site Services Inc., Case No. 4:19-CV-01152* filed in the Southern District of Texas, Houston Division. The Plaintiff in that case, Beau Kelley, is represented by Melissa Moore, Curt Hesse, and Renu Tandale of Moore & Associates.

9. On December 17, 2020, an oral deposition of Beau Kelley was conducted via Zoom. A partial transcript of Mr. Kelley's December 17, 2020 deposition is incorporated herein as Exhibit A.

10. Mr. Kelley's identity was confirmed by the Court Reporter. Mr. Kelley was duly sworn. Exhibit A, transcript p.5.

11. Mr. Kelley testified in part:

    Q.    Okay. Why did you decide to sue Alpine Site Services?

    A.    A buddy of mine said to give it a go. You might get something.

    Q.    Who was that?

    A.    Jeffery O'Loughlin

    Q.    Okay. And what did Mr. O'Loughlin tell you?

2

A. Just you might be able to get some overtime money back if you – if you take them to court over it.

Q. When did he tell you that?

A. Let's see. I filed this lawsuit in May. So he probably told me around March of 2019.

Q. Okay. You called him or he called you?

A. He called me.

Q. Okay. How many times did you have a conversation with Mr. O'Loughlin about his suggestion that you file a lawsuit?

A. Twice—no. Two or three times. Just once he told me to do it. And then the second time, I forgot all the information he gave me, so I had to get ahold of him to get the information. And then I think a third time, just to verify, you know, like, I sent him the attorney's phone number and stuff like that. And I had him verify that that was the correct phone number.

Q. Okay. And when you mean the attorney, you mean the attorneys that you still have today?

A. Correct.

Q. Mr. Curt Hesse?

A. Yes.

Q. Okay. And when you said you had to call him back to verify information, what information was that?

A. The law firm, mostly.

3

> Q. Did he tell you whether he was involved in his own dispute with the company?
>
> A. He did.
>
> Q. What did he tell you?
>
> A. He just said he took them to court, and he won. That's all he said.

Exhibit A. transcript pages 10, 11, 12 and 13.

12. Upon information and belief Defendant has, in violation of the Agreement, discussed the Agreement terms with other third parties including current and former employees of Plaintiff.

13. The matter *Beau Kelley v. Alpine Site Services Inc.*, *Case No. 4:19-CV-01152* in the Southern District of Texas, Houston Division is ongoing and causing significant damages to Plaintiff in the form of attorney fees and costs.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

14. Plaintiff incorporates paragraphs 1 through 13 as though fully set forth herein verbatim.

15. The parties entered into the Agreement on November 15, 2018.

16. Plaintiff performed all its obligations pursuant to the terms of the Agreement including payment of monies to Defendant.

17. Defendant accepted the payments provided by Plaintiff.

18. Defendant breached the terms of the Agreement.

19. Defendant's breach was material and entitles Plaintiff to all remedies available under law and equity, including disgorgement of all payments by Plaintiff under the terms of the Agreement.

20. But for Defendant's breach of the Agreement, Alpine would not be incurring damages in the form of significant attorney fees in defending the matter *Beau Kelley v. Alpine Site Services Inc.*, *Case No. 4:19-CV-01152* in the Southern District of Texas, Houston Division.

4

WHEREFORE, Plaintiff requests judgment entered in its favor, and against Defendant, in an amount of all monies paid to Defendant by Plaintiff pursuant to the Agreement, plus attorney fees and expenses incurred in defending the matter *Beau Kelley v. Alpine Site Services Inc.*, Case No. 4:19-CV-01152 filed in the Southern District of Texas, Houston Division in an amount to be determined at trial, pre- and post- judgment interest, costs and any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 29th of March, 2021.

BRADLEY DEVITT HAAS &WATKINS, P.C.

By: /s/ *Steven W. Watkins*
Steven W. Watkins, #27532

Plaintiff's Address:
10875 Dover St., Unit 1100
Westminster, CO 80021

Page 1

```
 1      IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF TEXAS
 2              HOUSTON DIVISION
 3   BEAU KELLEY, Individually  )
     and On Behalf of All Others )
 4   Similarly Situated,         )
                                 )
 5          Plaintiff,           )
                                 )
                                 ) CIVIL ACTION NO.
 6   VS.                         ) 4:19-CV-01152
                                 )
 7   Alpine Site Services, Inc., )
                                 )
 8          Defendant.           )
 9
10
11   ****************************************
12            ORAL DEPOSITION OF
13               BEAU KELLEY
14          (Via Video Teleconference)
15            DECEMBER 17, 2020
16                Volume 1
17   ****************************************
18
19      ORAL DEPOSITION of BEAU KELLEY, produced as a witness at
20   the instance of the Defendant, and duly sworn, was taken in the
21   above-styled and numbered cause on December 17, 2020, from 9:00
22   a.m. to 1:25 p.m., before Brandy R. Gurney, CSR in and for the
23   State of Texas, reported stenographically, via Zoom, in Cheyenne,
24   Wyoming, pursuant to the Federal Rules of Civil Procedure and the
25   provisions stated on the record or attached hereto.
```

Page 2

```
 1                   APPEARANCES
 2   FOR THE PLAINTIFF:
 3       MR. CURT HESSE
         (VIA VIDEO TELECONFERENCE)
 4       MS. RENU TANDALE
         (VIA VIDEO TELECONFERENCE)
 5       MOORE & ASSOCIATES
         440 Louisiana Street, Suite 675
 6       Houston, Texas 77002
         Phone: 713.222.6775
 7       curt@mooreandassociates.net
 8
     FOR THE DEFENDANT ALPINE SITE SERVICES, INC.:
 9
         MR. DAVID B. JORDAN
10       (VIA VIDEO TELECONFERENCE)
         MS. NICOLE S. LEFAVE
11       (VIA VIDEO TELECONFERENCE)
         LITTLER MENDELSON, PC
12       1301 McKinney Street, Suite 1900
         Houston, Texas 77010
13       Phone: 713.951.9400
         Fax: 713.583.2649
14       djordan@littler.com
15
     ALSO PRESENT:
16
         MR. STEVEN WATKINS (Via Video Teleconference)
17       MS. STACEY EASTERDAY (Via Video Teleconference)
18
19
20
21
22
23
24
25
```

Page 3

```
 1                  I N D E X
 2                                    PAGE
 3   Stipulations                       1
 4   Appearances                        2
 5
 6   WITNESS: BEAU KELLEY
 7     Examination By Mr. Jordan        5
 8     Examination By Mr. Hesse        120
 9     Further Examination By Mr. Jordan 127
10
11   Signature and Changes             130
12   Reporter's Certificate            132
13
14
15             EXHIBITS INDEX
16
17   EXHIBIT 1
        Vehicle Photos                  36
18
     EXHIBIT 2
19      2009 DOL Audit                  55
20   EXHIBIT 3
        Overtime Policy for Laborer, Welder,
21      Operator, and Driver Positions  55
22   EXHIBIT 4
        Employee Work Report, 4-8-16    61
23
     EXHIBIT 5
24      Employee Work Report, 4-12-16   75
25
```

Page 4

```
 1   EXHIBIT 6
        Employee Work Report, 4-20-16   79
 2
     EXHIBIT 7
 3      Employee Work Report, 4-29-16   80
 4   EXHIBIT 8
        Employee Work Report, 5-4-16    83
 5
     EXHIBIT 9
 6      Employee Work Report, 5-13-16   83
 7   EXHIBIT 10
        Employee Work Report, 6-8-16    84
 8
     EXHIBIT 11
 9      Employee Work Report, 6-7-16    85
10   EXHIBIT 12
        Employee Work Report, 6-8-16    86
11
     EXHIBIT 13
12      Employee Work Report, 6-23-16   87
13   EXHIBIT 14
        Employee Work Report, 6-27-16   88
14
     EXHIBIT 15
15      Employee Work Report, 7-14-16   88
16   EXHIBIT 16
        Employee Work Report, 7-28-16   89
17
     EXHIBIT 17
18      Employee Work Report, 6-3-16    90
19   EXHIBIT 18
        Employee Work Report, 9-2-16    90
20
     EXHIBIT 19
21      Employee Work Report, 9-8-16    92
22   EXHIBIT 20
        Plaintiff Beau Kelley's Objections and
23      Responses to Defendant's First Set of
        Interrogatories and Requests for Admission 93
24
     EXHIBIT 21
25      Employee Work Reports, 4-8-16 through 9-8-17  112
```

LEXITAS
888-893-3767
www.lexitaslegal.com

Beau Kelley
Pages 5..8

Page 5

                PROCEEDINGS
1
2        (On the record at 9:00 a.m.)
3        THE REPORTER: This deposition of Beau Kelley is
4  being conducted remotely via Zoom. Today's date is December 16,
5  2020; and the time is 9:00 a.m. The witness is located in
6  Cheyenne, Wyoming. My name is Brandy Garney, CSR No. 6308.
7        Would the witness please confirm their identity by
8  placing their picture ID in front of the camera briefly.
9        (Witness complies.)
10       THE REPORTER: Thank you.
11              BEAU KELLEY,
12  having been first duly sworn, testified as follows:
13              EXAMINATION
14  BY MR. JORDAN:
15   Q.  All right. Good morning, sir. Can you please state
16  your name for the record.
17   A.  Beau Kelley.
18   Q.  All right. What is your current address?
19   A.  1120 East 22nd Street, Cheyenne, Wyoming.
20   Q.  All right. Is that a house or an apartment?
21   A.  It's a house.
22   Q.  Do you own the house?
23   A.  My girlfriend does. Fiancee, sorry.
24   Q.  What's her name?
25   A.  Jenell Ladbury.

Page 6

1   Q.  Can you spell that last name for me, please.
2   A.  L-a-d-b-u-r-y.
3   Q.  Okay. What is your current mobile number?
4   A.  490-540-2630.
5   Q.  Okay. Is that your only phone number?
6   A.  Yes, sir.
7   Q.  How long have you had that phone number?
8   A.  Since I can remember.
9   Q.  Over the last five years?
10  A.  Yeah.
11  Q.  Okay. What's your current e-mail address?
12  A.  B Kelley B-K-e-l-l-e-y 29 at live dot-com.
13  Q.  Okay. Do you use any other e-mail addresses?
14  A.  Nope.
15  Q.  Have you used any other e-mail addresses in the last
16  five years?
17  A.  Nope.
18  Q.  Have you ever had your deposition taken before?
19  A.  Nope.
20  Q.  Have you ever testified in court before, civil or
21  criminal --
22  A.  Nope.
23  Q.  -- or any other action?
24  A.  Nope.
25  Q.  So, Mr. Kelley, one of the ground rules today is we're

Page 7

1  all on a computer, taking this deposition. And I'm going to try
2  to be as efficient as possible. But the only way the court
3  reporter, Ms. Garney, who's on the screen here, can type our
4  words is if you let my get my entire question out, even if you
5  know exactly how it's going to -- it's going to come out. And
6  then you answer. And then I wait for you to completely answer,
7  and then I go to the next question. Is that okay?
8   A.  Yep. That works. Sorry I cut you off.
9   Q.  That's all right. So you've never testified in any
10  court proceeding before?
11  A.  No.
12  Q.  Okay. Have you ever filed a lawsuit before?
13  A.  Nope.
14  Q.  Have you ever been a party to a lawsuit?
15  A.  No.
16  Q.  Have you ever been a defendant in a lawsuit?
17  A.  Nope.
18  Q.  Have you ever made a complaint about wages to any
19  governmental entity?
20  A.  No.
21  Q.  All right. This is the first time you've ever made a
22  formal complaint about wages, in this litigation?
23  A.  Yes.
24  Q.  Okay. Couple of ground rules. Okay. I mentioned one
25  a minute ago. We can't interrupt each other, because it's

Page 8

1  impossible for the court reporter to get it all written down,
2  particularly when we're virtual, okay?
3   A.  Okay.
4   Q.  All right. I need you to answer verbally today. I --
5  you don't have a problem with that yet, but nods and shrugs do
6  not translate well in transcripts. So please, verbal answers
7  only, okay?
8   A.  Will do.
9   Q.  Your lawyer, Curt, may make objections to my questions.
10  It's pretty typical in depositions for objections to be lodged.
11  Unless your attorney instructs you, though, to not answer, you
12  still need to answer my question. Do you understand that?
13  A.  Yes.
14  Q.  Okay. And he'll -- he'll make those instructions. If
15  you have questions about that, you can ask your attorney. If you
16  need to take a break for any reason, you need to let me know,
17  okay?
18  A.  Okay.
19  Q.  All right. I suspect we'll go at least a few hours
20  straight without -- until we take our first break. But if you
21  need one in the interim, let me know. The only caveat is if
22  there's a question pending, like so I've asked you a question,
23  you'll need to answer that question before you go on break, okay?
24  A.  Okay.
25  Q.  All right. Okay. If at any point today you want to go

LEXITAS

Page 9

1  back and clarify an answer you gave, I'm happy to let you do
2  that. Do you understand that?
3    A. Yep.
4    Q. All right. But you need to remember you're under oath
5  today. So whatever you tell me, regardless if you change it
6  later, that's your sworn testimony today, okay?
7    A. Okay.
8    Q. All right. And you understand the court reporter has
9  put you under oath. That means you're required by law to tell
10 the truth. You understand that?
11   A. Yep.
12   Q. All right. And your failure to tell the truth can
13 subject you to criminal and civil perjury charges. Do you
14 understand that?
15   A. Yes, sir.
16   Q. All right. And your attorney may or may not have
17 advised of you this, but there definitely are instances of
18 witnesses who have failed to properly testify and tell the truth,
19 and have been convicted of criminal perjury in the district where
20 you filed this case, okay?
21   A. Okay.
22   Q. All right. Is there any reason that today is not the
23 best day to give testimony? And when I ask you that, I mean
24 because you're distracted, you have a medical condition, your
25 memory is foggy for today, you're under the influence of some

Page 10

1  drug or alcohol? Any reason like that?
2    A. No. I just didn't sleep that great last night.
3    Q. Okay. Is it going to affect your ability to give
4  truthful testimony today?
5    A. No.
6    Q. Okay. All right. And you're not otherwise under the
7  influence of any drugs or alcohol today, that may affect your
8  ability to testify?
9    A. No.
10   Q. Okay. All right. You understand that you filed a
11 lawsuit against Alpine Site Services, correct?
12   A. Correct.
13   Q. All right. And you filed that lawsuit in approximately
14 May of 2019. Do you recall that?
15   A. Yes.
16   Q. Okay. Did you read or review the lawsuit before it was
17 filed?
18   A. I skimmed over it.
19   Q. Okay. But you had an opportunity to consider whether
20 everything in the document was truthful?
21   A. Yes.
22   Q. Okay. Why did you decide to sue Alpine Site Services?
23   A. A buddy of mine said to give it a go. You might get
24 something.
25   Q. Who was that?

Page 11

1    A. Jeffery O'Loughlin.
2    Q. Okay. And what did Mr. O'Loughlin tell you?
3    A. Just you might be able to get some overtime money back
4  if you -- if you take them to court over it.
5    Q. Okay. And did he tell you anything else?
6    A. No. That's pretty much it.
7    Q. When did he tell you that?
8    A. Let's see. I filed this lawsuit in May. So he
9  probably told me around March of 2019.
10   Q. Okay. And did he tell you that in writing?
11   A. No. It was over the phone.
12   Q. Okay. You called him or he called you?
13   A. He called me.
14   Q. Okay. He called you to do what? Tell you about this
15 lawsuit?
16   A. And he also knew of a -- he knew I wasn't happy in my
17 job, so he gave me a number to call for a different job.
18   Q. Okay. Now, look, one thing I'm not going to ask you
19 about today are communications between you and your attorneys,
20 okay?
21   A. Okay.
22   Q. Attorney -- those communications are protected by the
23 attorney-client privilege, okay? And if I were to ask you a
24 question that would say, can you tell me what you told your
25 attorney or what your attorney told you, your attorney would

Page 12

1  interrupt me and advise me to -- or advise you not to answer the
2  question. So my intent today is not to ask you anything about
3  communications to or from your attorneys. Is that understood?
4    A. Yes, sir.
5    Q. Okay. How many times did you have a conversation with
6  Mr. O'Loughlin about his suggestion that you file a lawsuit?
7    A. Twice -- no. Two or three times. Just once he told me
8  to do it. And then the second time, I forgot all the information
9  he gave me, so I had to get ahold of him to get the information.
10 And then I think a third time, just to verify, you know, like, I
11 sent him the attorney's phone number and stuff like that. And I
12 had him verify that that was the correct phone number.
13   Q. Okay. And when you mean the attorney, you mean the
14 attorneys that you still have today?
15   A. Correct.
16   Q. Mr. Curt Heese?
17   A. Yes.
18   Q. Okay. And when you said you had to call him back to
19 verify information, what information was that?
20   A. The law firm, mostly.
21   Q. Okay. All right. Did he tell you details about any
22 disputes that he may have had with the company?
23   A. No, he did not.
24   Q. Did he tell you whether he was involved in his own
25 dispute with the company?

Page 13

```
1    A.  He did.
2    Q.  What did he tell you?
3    A.  He just said he took them to court, and he won. That's
4  all he said.
5    Q.  Okay. Did he tell you anything else?
6    A.  Nope. I asked. He didn't tell me.
7    Q.  Okay. All right. And those were his specific words?
8  He won?
9    A.  Yes.
10   Q.  Okay. All right. Did he send you any documents
11 related to the lawsuit --
12   A.  He did not.
13   Q.  -- that he allegedly filed? Okay. And all those
14 conversations, you believe, happened around March of 2019?
15   A.  Between March and May of 2019.
16   Q.  Okay. All right. Were you guys friends?
17   A.  Yeah. We were pretty good friends when we were working
18 together at Alpine.
19   Q.  All right. Are you still friends today?
20   A.  We talk on occasion.
21   Q.  All right. When's the last time you talked to him?
22   A.  Two months ago-ish.
23   Q.  Okay. Did you talk about your lawsuit?
24   A.  No.
25   Q.  Okay. What did you talk about?
```

Page 14

```
1    A.  He asked if I was looking for work, still.
2    Q.  Okay. And what did you tell him?
3    A.  I told him yeah, man. I'm laid off. But I don't want
4  to drive all the way down to Denver every day.
5    Q.  All right. Have you talked about any other subjects,
6  other than looking for work?
7    A.  Recreational target shooting. We talked about that a
8  couple times.
9    Q.  Is that a hobby that both you and him share?
10   A.  Yeah.
11   Q.  Okay. A couple -- let me raise a couple of issues
12 about today's deposition. We're doing this virtually. That's a
13 little unusual, but -- but maybe not so much for this current
14 environment.
15       Have you reviewed the deposition notice that we
16 sent you in this particular case?
17   A.  Deposition notice? I don't -- doesn't sound familiar.
18   Q.  Okay. Have you seen -- if you feel like there's a
19 delay on my end, it is because we are maybe looking through
20 documents as we get ready for this -- as we get ready to ask you
21 questions, just so you're aware.
22       Let me ask you this: What did you do to prepare
23 for your deposition today?
24   A.  Really, nothing.
25   Q.  Okay. Again, I don't want to know what you told your
```

Page 15

```
1  lawyers or what they told you, but did you meet with your
2  attorneys to prepare for the deposition?
3    A.  Yes. We did speak yesterday.
4    Q.  Okay. And how long did you meet with them?
5    A.  It was probably a half hour, 45-minute conversation,
6  about.
7    Q.  Okay. And did you review any documents, in preparation
8  for your deposition, with your attorneys?
9    A.  Kind of, sort of. Not really.
10   Q.  Okay. Well, did -- what documents did you look at,
11 even if you didn't study them?
12   A.  I mean, it was more or less like the -- the work
13 activities I did this week for Alpine form. It was pretty much
14 just that.
15   Q.  Okay. And you looked at an example of one of those?
16   A.  Yeah. And I can kind of remember what they look like,
17 too.
18   Q.  Okay. Did you look at any other documents or see any
19 other documents or were you shown any other documents?
20   A.  I was able to look at my personnel file, as well, and
21 something else. I can't remember what it was exactly.
22   Q.  Let me give you a second to think about it, because I'd
23 like to know what that document was. Can you describe it in any
24 way?
25   A.  There was the work performed, the personnel file, and
```

Page 16

```
1  then -- yeah, I can't -- I can't remember, for the life of me,
2  what it was.
3    Q.  Okay. If you recall at some point during this
4  deposition, I'd like you to tell me, and we can make a
5  supplement. Would you do that, please?
6    A.  Can do.
7    Q.  Or if I show you a document and it refreshes your
8  recollection that that's indeed the document that you saw, will
9  you -- will you note that in the questioning?
10   A.  Yep.
11   Q.  Okay. Tell me, why did you sue Alpine?
12   A.  Lost wages.
13   Q.  Okay. What do you mean by lost wages?
14   A.  Not being paid OT.
15   Q.  When you say OT, you mean overtime?
16   A.  Yes, sir.
17   Q.  What do you believe you were entitled to, with regards
18 to overtime?
19   A.  Whatever was -- is legally granted to me, I suppose.
20   Q.  Do you have a number that you've identified as being
21 due?
22   A.  I do not have a number.
23   Q.  You've never done the math?
24   A.  Nope.
25   Q.  All right. Did O'Loughlin give you a sense of how much
```

LEVITAS